UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN J. FERRIE, <br><br> Defendant. | Civil Action No. 23-1217 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, the United States Securities and Exchange Commission ("SEC" or "Commission") alleges as follows against defendant Jonathan J. Ferrie ("Ferrie"):

**SUMMARY**

1. This securities fraud enforcement action involves Ferrie's insider trading in securities of Cigna Group ("Cigna") while he was a Cigna employee. Cigna is a large health insurance company with publicly traded stock. In mid-June 2021, Ferrie traded in Cigna securities using material nonpublic information that he learned in his role as a financial controller for one part of Cigna's insurance business. Ferrie traded just after he learned that financial performance during the second quarter of 2021 (the quarter ended June 30, 2021) was below expectations for his division. That quarter, the population of insured people covered by Ferrie's division had surprisingly larger medical costs as people both received Covid-related medical care and resumed routine medical care upon becoming vaccinated and emerging from Covid-19 lockdowns. Ferrie learned of this unexpected increase in medical care usage because of his role within the company, when the information was not publicly available. The information that Ferrie learned would have been important to any reasonable investor in Cigna securities because

of its obvious potential ramifications for Cigna's overall financial performance. Using this information, Ferrie traded in Cigna's stock by purchasing stock options that would be profitable for Ferrie only if Cigna's stock fell substantially in price by August 20, 2021. Ferrie knew that in late July or early August 2021 Cigna would publicly announce its second quarter financial performance. On August 5, 2021 Cigna announced higher than expected medical costs as people it insured continued to incur Covid-related medical costs but also resumed more routine healthcare -- the same metric that Ferrie had seen within his own division. Cigna's stock immediately dropped by 13 percent, and Ferrie realized an approximately 236% profit of $16,039.78 on his investment of $6,782.05. When Ferrie made his stock options trades, he violated Cigna's written policy against insider trading and its written policy expressly forbidding employees from trading in options on Cigna stock. He also violated the federal securities laws that prohibit trading on inside information.

## VIOLATIONS

2. By engaging in the conduct alleged in this Complaint, Ferrie violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

3. The Commission brings this action pursuant to the authority conferred upon it by Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].

4. The Commission seeks a final judgment: (a) permanently enjoining Defendant from future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (b) ordering Defendant to disgorge his ill-gotten gains, together with prejudgment interest thereon, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5)

and 78u(d)(7)]; (c) ordering Defendant pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; (d) prohibiting Defendant, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act; and (e) ordering any other and further relief that the Court may deem just and proper.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa] and pursuant to 28 U.S.C. § 1331.

6. The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because, among other things, Defendant resides or transacts business in this District, and many of the acts and transactions constituting the violations alleged in this Complaint occurred in this District.

7. In connection with the conduct alleged in this Complaint, Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails, or of a facility of a national securities exchange.

## DEFENDANT

8. **Ferrie**, age 35, resides in Prospect, Connecticut. From 2016 to August 2022, Ferrie was an employee of Cigna with positions as an Accounting Senior Specialist, Financial Controller, and Financial Analysis Senior Advisor. From April 2018 to November 2021, Ferrie was Financial Controller of the Individual and Family Plans ("IFP") division of Cigna's health

insurance business.  Ferrie received his undergraduate degree in Accounting in 2010, and a Master's degree in Business Administration (MBA) in 2021.

## RELATED ENTITY

9.      **Cigna**, a Delaware corporation headquartered in Bloomfield, Connecticut, is one of the nation's largest health insurance and service providers.  During the relevant period, Cigna's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the New York Stock Exchange.  Cigna publically files periodic reports, including annual reports on Form 10-K and quarterly reports on Form 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder.

## STATEMENT OF FACTS

**A.      Ferrie's Access to Material Non-Public Information**

10.     In 2021, Cigna's "U.S. Medical" reporting segment comprised its health insurance businesses including the IFP division.  The IFP division includes Cigna's participation in health care exchanges where individuals purchase insurance directly (distinct from, for example, coverage provided through an employer).  In 2021, the IFP division represented approximately 9% of U.S. Medical's insured population and 6.7% of collected premiums.

11.     Ferrie began his employment at Cigna in 2016 as an Accounting Senior Specialist in the U.S. Commercial division of Cigna's U.S. Medical business.  In 2018, Ferrie became the Financial Controller of the IFP division of Cigna's U.S. Medical business.

12.     When he joined Cigna in 2016, Ferrie acknowledged receipt of Cigna's written policy on Securities Transactions and Insider Trading ("Insider Trading Policy").  In March 2020, Ferrie received by email a written reminder that he remained subject to the Insider Trading Policy, which was attached.  Cigna's Insider Trading Policy contained a blanket prohibition on

"speculative transactions" in Cigna securities which "include, but are not limited to, buying or selling any put or call options." The policy also prohibited trading "while you are aware of material non-public information about the company." The policy identified "earnings, revenue or similar financial information," "unexpected financial results," and "unpublished financial reports or projections" as examples of "material" information.

13. The Insider Trading Policy further defined "non-public" information to be any information not "released to the public by Cigna through appropriate channels (e.g., by means of a press release or a widely disseminated statement from a senior officer)….You should generally consider information about Cigna to be non-public until at least one full trading day following public disclosure by Cigna."

14. A key metric of Cigna's financial reporting for the U.S. Medical division is the Medical Care Ratio. In the health insurance industry, the Medical Care Ratio (also known as a medical loss ratio) represents benefit expenses paid by the insurance company as a percentage of premiums paid to the insurance company by or on behalf of insured parties. A lower Medical Care Ratio is indicative of greater profitability, because it means the insurer is retaining a greater portion of premiums.

15. As Financial Controller of the IFP, Ferrie analyzed actual financial results and developed financial projections for the division. In that role, Ferrie was entrusted with and had immediate access to financial information pertaining to the IFP division, including the Medical Care Ratio. Ferrie received and analyzed interim non-public financial data, and created various reports and projections based on that data.

16. Specifically, Ferrie received or otherwise had access to actual monthly financial results by the tenth day of the following month. Ferrie then prepared financial results and

projections, discussed them with his immediate supervisor, and presented his findings to the IFP division's senior management. Ferrie's reports reflected or otherwise incorporated the Medical Care Ratio for the IFP division.

### B.     Ferrie Learned about Interim Financial Results Below Expectations.

17.     Like other public companies, Cigna publically files annual audited financial statements with the Commission on Form 10-K and publically provides interim financial updates on a quarterly basis on Form 10-Q. Cigna has also historically announced its quarterly earnings by means of a press release, followed by an earnings call, which is a conference call for Cigna management to answer questions from professional stock analysts. When announcing its quarterly earnings, Cigna has also historically provided an update on its forecasted full-year financial results.

18.     While the U.S. Medical business was not the largest of Cigna's operating business lines, it comprised approximately one-quarter of Cigna's overall revenues and over half of Cigna's overall profits. Cigna's U.S. Medical business has historically received particular attention in earnings reports given its greater percentage of overall profits and far greater growth and fluctuations. For example, on an August 5, 2021 earnings call with equity research analysts announcing financial results for the second quarter of 2021, 10 of 15 analysts asked specifically about the U.S. Medical business.

19.     In quarterly earnings announcements, Cigna has reported the Medical Care Ratio when describing quarterly financial results for the U.S. Medical business. For instance, U.S. Medical's reported Medical Care Ratio in the second quarter of 2019 was 81.6%. In the second quarter of 2020, after the onset of the Covid-19 pandemic in the United States, Cigna reported a Medical Care Ratio of 70.5%, attributing this lower percentage to "significantly lower medical utilization . . . as individuals deferred care due to the COVID-19 pandemic."

20. In a May 7, 2021 press release announcing earnings for the first quarter of 2021 (quarter ended March 31, 2021), Cigna provided a full-year outlook for 2021 that included a projected $1.25 per share in net unfavorable impacts of Covid-19. Cigna described Covid-19 related impacts as including, among other things, "the direct costs of COVID-19 testing, treatment and vaccines . . . partially offset by a reduction in non-COVID utilization." Cigna also reported a Medical Care Ratio for the first quarter of 2021 of 81.8%, and noted that it reflected "COVID-19 related impacts" among other things. In Cigna's May 7, 2021 earnings call for the first quarter of 2021, Cigna's Chief Financial Officer (CFO) stated that for the U.S. Medical division, "[w]e expect direct COVID-19-related testing and treatment to decline throughout the balance of the year and also anticipate more normalized non-COVID utilization." In response to an analyst question, the CFO noted that "the COVID-19 testing and treatment burden on our book was a little bit lower than we anticipated for the quarter. However, non-COVID utilization was a little bit higher than we anticipated coming into the quarter. So the net effect of those 2 factors led to the U.S. Medical MCR [Medical Care Ratio] being back in line with where we expected it to be."

21. In the first week of June 2021, Ferrie received the IFP division's actual financial results for the month of May (the second month of the second quarter of Cigna's fiscal year). On June 8, 2021, Ferrie's supervisor emailed him with a specific, non-routine task to prepare several financial projections because the actual financial results two months into the quarter were so concerning, including the need to adjust the financial results for the prior quarter and an "unfavorable" variance in May between medical costs and premiums (the two components of the Medical Care Ratio):

> As you see in May results, there was some sizeable [prior period adjustments] back to Q1 as well as unfavorable May margin variance. . . . Once we close May, let's do a projection using May YTD results. Thinking there will be a lot of pressure this year, given how things are turning out so far. We will probably need to do a couple scenarios on claim trend…to show a potential range of outcomes.

22. On or about June 10, 2021, Ferrie had access to a report comparing IFP's actual financial results for the month of May, actual financial results for the quarter to date (April and May), and the two-year projection that had been based on actual first quarter financial results. This report showed a sharp increase in IFP's Medical Care Ratio month over month, with a significant increase in the Medical Care Ratio (81.5% projected vs. 93.3% May actual) and corresponding significant drop in earnings versus IFP internal projections ($8.9 million surplus projected vs. $10.6 million loss May actual).

23. On June 15, 2021, a stock analyst published a report on an investor conference call with Cigna management. The report noted that "[u]tilization trends" were among the "key areas investors focused on during our call . . . underscoring [Wall] Street's emphasis on near-term risk from cost headwinds heading into [the second quarter]." Regarding utilization trends, the report noted that Cigna's second quarter "utilization trends are shaping in-line with guidance assumptions" and that second quarter "utilization across [Cigna's] book of business is trending in-line with management expectations and underlying MLR [medical loss ratio] assumptions embedded in the guidance." Cigna, in other words, reaffirmed its guidance from the first quarter press release and earnings call on May 7, 2021, when it had forecast $1.25 per share in net unfavorable impacts of Covid-19.

24. On June 16 and 17, 2021, Ferrie met at length with his supervisors to discuss reports and projections that Ferrie had prepared. The June 17, 2021, meeting took place after the securities markets had closed. Ferrie and his supervisors reviewed the 2021 full-year premiums, insurance claims, and Medical Care Ratio projections prepared by Ferrie. The data showed that

8

IFP had a higher than expected Medical Care Ratio through May 2021. IFP's higher costs were attributable to higher claim costs and utilization rates from pandemic-related developments. These developments included vaccine rollouts and increased patient visits to hospitals and other medical providers, together with ongoing Covid-related care, which were societal trends not unique to IFP.

### C. Ferrie Immediately Purchased Cigna Put Options

25. On Friday, June 18, 2021, in the morning after Ferrie's two-day meetings with supervisors on the IFP results and forecasts, Ferrie began to place orders to purchase three Cigna put options (each for 100 shares) in his brokerage account at Fidelity Investments. A put option is a bet by the purchaser of this stock-related product that the stock's price will decrease. Each put option represents 100 shares of the underlying stock. A put option is a contract giving the owner of the option (in this case, Ferrie) the right to sell a specified amount of an underlying stock at a fixed price (the "strike price") before a specified future date (the "expiration date"). The owner of put options pays a purchase price, called a "premium" (similar to an insurance premium), for the options. The owner is betting that the underlying stock will drop below the strike price before the expiration date. If the stock price drops below the strike price, then the option owner can buy shares on the open market at the lower market price and profit by selling shares at the agreed-upon strike price to the opposite party in the options contract. Put options thus become more valuable for their owner the farther the price of the underlying stock falls below the strike price. Conversely, if the stock price does not drop below the strike price before the expiration date, then the options expire worthless and the owner of the options suffers a loss in the amount of the purchase price, or premium, paid for the options.

26. The following trading day, Monday, June 21, 2021, Ferrie purchased fourteen additional Cigna put options (also for 100 shares each) in his brokerage account at Stifel Nicolaus ("Stifel"). A member of Ferrie's family ("Ferrie's Relative") is a registered representative of Stifel, and the representative on Ferrie's Stifel brokerage account. Ferrie's Relative executed Ferrie's Cigna put option trades in the Stifel account. Moreover, Ferrie's Relative simultaneously bought Cigna put options in his own personal brokerage account with the same expiration date as Ferrie. Ferrie's Relative purchased the Cigna put options based on Ferrie's recommendation. Ferrie told Ferrie's Relative that Ferrie's rationale for the put option included, among other things, Covid-19 effects on Cigna's business given that people were coming out of Covid lockdowns, that there would be more surgeries that people had put off, and more use of the healthcare system, with people no longer afraid to go to the doctor or to the hospital.

27. Ferrie executed the following Cigna put option purchases:

| Date | Time of Execution | # Puts (each to sell 100 shares) | Expiration Date | Put Strike Price | Current Stock Price | % Difference |
|---|---|---|---|---|---|---|
| June 18 (Friday) | 10:02 a.m. | 3 | August 20 | $210 | $232 | -9.5% |
| June 21 (Monday) | 11:20 a.m. | 14 | August 20 | $220 | $233 | -5.6% |

28. Specifically, on June 18, 2021, Ferrie bought 3 put options, each giving him the option to sell 100 shares of Cigna stock at $210 per share on or before August 20, 2021. Ferrie paid $902.05 for those options. On June 21, 2021, Ferrie bought 14 put options, each giving him the option to sell 100 shares of Cigna stock at $220 per share on or before August 20, 2021. Ferrie paid $5,880 for these put options. In other words, on June 18, 2021, when Cigna was trading at $232 per share, Ferrie placed $902.05 on a bet that Cigna's price would fall below

$210 per share by August 20, 2021.  And, on June 21, 2021, when Cigna was trading at $233 per share, Ferrie placed $5,880 on a bet that Cigna's price would fall below $220 per share by August 20, 2021.

29. On August 5, 2021, Cigna issued its quarterly earnings announcement for the second quarter of 2021.  In addition to reporting quarterly financial results, Cigna provided a projection of full-year financial performance for 2021.  Cigna reaffirmed its projected full-year 2021 earnings despite a decrease in expected earnings from U.S. Medical, because of an offsetting increase in another part of its business.  However, Cigna's full year outlook included "approximately $2.50 per share in net unfavorable impacts of COVID-19."  The estimate of $2.50 per share, attributed primarily to U.S. Medical, was a marked increase from just three months earlier, when Cigna had projected $1.25 per share in net unfavorable impacts of Covid-19 in its first quarter earnings announcement in May 2021.

30. In the August 5, 2021 press release, Cigna reported an increase in the Medical Care Ratio for U.S. Medical to 85.4% in the second quarter of 2021, as compared to 70.5% in the second quarter of 2020.  Cigna attributed the increase from the second quarter of 2020 to the second quarter of 2021 to "significantly lower medical care in second quarter 2020 due to the onset of the COVID-19 pandemic, an acceleration in the return to historical levels of utilization, the direct costs of COVID-19 testing and treatment, and the pricing effect of the repeal of the health insurance industry tax."

31. On the August 5, 2021 earnings call with investors and analysts, Cigna's CEO noted "elevated medical cost pressure in the quarter as costs associated with direct COVID-19 care and the broader ramp-up of utilization exceeded our projections."  Cigna's CFO noted that Cigna now expected "a decrease in expected earnings from U.S. Medical driven by a higher

medical care ratio." The CFO announced: "we now expect a full year COVID-19-related headwind of approximately $2.50 per share, primarily impacting our U.S. Medical business. This includes approximately 80% related to impacts on the medical care ratio." Cigna's CFO explained that the Medical Care Ratio was being affected by both Covid-direct costs (which were highest through April, the first month of the quarter) and general medical costs returning earlier than anticipated.

32. During the August 5, 2021 earnings call, a stock analyst asked whether Cigna's individual business -- i.e., the IFP division where Ferrie worked -- "may or may not be contributing to the headwinds you're seeing." Cigna's CEO responded that the individual business had seen similar trends -- "an uptick in utilization within that book of business, more approximating from a non-COVID standpoint of baseline activity with some additional utilization on the COVID side of the equation."

33. In news reporting of the August 5, 2021 earnings announcement, the headlines in major news feeds included "Cigna's Shares Plunge as Medical Costs Outpace Expectations" and "Cigna profit falls 16.4% on higher medical costs." Other publicly traded health insurance companies also saw their stock price decline that day, which the financial press attributed to Cigna's announcement. One article noted that "[h]ealthcare plan stocks moved sharply lower Thursday [August 5, 2021] after pharmacy benefit and health insurance provider Cigna Corporation doubled the estimated impact that COVID-19 would have on its full-year results. The company surprised investors by saying that it now anticipates the pandemic to hit earnings by $2.50 per share, substantially higher than its previous forecast of $1.25 per share."

34. On the day of the announcement, Cigna's stock price fell from the prior day's closing price of $231.48 per share to as low as $199.66 per share (-13.7%) before closing for the day at $206.21 per share.

35. Shortly after the securities markets opened on August 5, 2021, Ferrie sold the put options in his two brokerage accounts for a total profit of approximately $16,000 (a 236% return). Specifically, on June 18, 2021, Ferrie had paid $902.05 for Cigna put options, and on August 5, 2021 he sold those options for $1,821.94. On June 21, 2021, Ferrie had paid $5,880 for Cigna put options, and on August 5, 2021 he sold those options for $20,999.89.

36. Cigna's written Insider Trading Policy expressly prohibited Ferrie from engaging in "speculative transactions" in Cigna securities. Cigna specified that speculative transactions "include, but are not limited to, buying or selling any put or call options." Ferrie's put option purchases on June 18, 2021 and June 21, 2021, and his ultimate sale of those put options on August 5, 2021, each violated this blanket prohibition, and Ferrie engaged in this trading without any disclosure to or approval from his supervisors, Cigna compliance or ethics personnel, or any other Cigna management.

37. Ferrie purchased the Cigna put options, as alleged above, while in possession of and based on material nonpublic information regarding the Medical Care Ratio and its impact on financial performance within the IFP division specifically and the U.S. Medical business more generally. This information was material because there was a substantial likelihood that a reasonable investor would consider the information important in deciding whether to purchase or sell Cigna securities.

38.     The information that Ferrie learned in June 2021 concerning the Medical Care Ratio and its impact on financial performance within the IFP division was nonpublic because, prior to the August 5, 2021 quarterly earnings announcement, it was not broadly disseminated generally among the investing public.

39.     Ferrie knew or was reckless in not knowing that the information that he possessed about the Medical Care Ratio and its impact on financial performance was material and nonpublic.

40.     Ferrie knew or was reckless in not knowing that, by trading on Cigna's confidential information, as alleged above, he was breaching Cigna's policies and his fiduciary duty or similar obligation arising from a relationship of trust and confidence to Cigna.

## **CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

41.     The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     Ferrie, directly or indirectly, acting knowingly or recklessly, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange:  (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

43.     By reason of the foregoing, Ferrie violated and, unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

A.     Enter a Final Judgment permanently restraining and enjoining Ferrie, and his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, who received actual notice of the judgment by personal service or otherwise, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.     Enter a Final Judgment ordering Ferrie to disgorge his ill-gotten gains, together with prejudgment interest thereon, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

C.     Enter a Final Judgment ordering Ferrie to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

D.     Enter a Final Judgment barring Ferrie pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act;

E.     Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial in this action of all issues so triable under the claims in this Complaint.

Dated:  September 18, 2023

/s *Michael C. Moran*
Michael C. Moran (CT phv08741,
   Mass. Bar No. 666885)
Jeffrey Cook (CT phv207372,
   Fla. Bar No. 645758)
Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
MoranMi@sec.gov
CookJe@sec.gov
Moran phone:  (617) 573-8931
Cook phone:   (617) 573-4581
Facsimile:       (617) 573-4590
*Counsel for Plaintiff Securities and Exchange Commission*

<u>Local Counsel</u>:
Michelle L. McConaghy
Chief, Civil Division
United States Attorney's Office
District of Connecticut
157 Church Street
New Haven, CT 06510
(203) 821-3700
Michelle.McConaghy@usdoj.gov